**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson**

Civil Action No. 19-cv-01157-RBJ

MIGEL C. WISE,

      Applicant,

v.

MATTHEW HANSEN, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 1), filed *pro se*, by Migel C. Wise, on April 19, 2019. Having considered the Respondents' Answer (Doc. # 24), Applicant's Reply (Doc. # 31), and the state court record, the Court will deny the Application.

### I. Factual and Procedural Background

In April 2011, Mr. Wise was convicted by a jury in Arapahoe County District Court Case No. 10CR1390 of attempted first-degree murder after deliberation, first degree burglary, second degree assault, and a crime of violence sentence enhancer. (State Court Record ("R.") at 250).[1] He was sentenced to an aggregate 40-year term of imprisonment. (*Id.*). The Colorado Court of Appeals affirmed Applicant's convictions in *People v. Miguel Christian Wise (Wise I)*, No.

---

[1] For ease of reference, the Court's citation to page numbers in the state court record is to the page numbers as they appear on the PDF documents included in the CD Rom submitted to the Court on July 5, 2019. (Doc. # 20).

11CA1516 (Colo. App. Oct. 16, 2014) (unpublished) (Doc. # 11-2).   Mr. Wise's petition for certiorari review was denied by the Colorado Supreme Court on August 3, 2015.   (Doc. # 1-1 at 4).

Mr. Wise filed a motion for post-conviction relief pursuant to Colo. Crim. P. Rule 35(c), which was supplemented by his court-appointed counsel and denied by the state district court on June 28, 2017.   (Doc. # 1-1 at 54).   The Colorado Court of Appeals affirmed the district court's order in *People v. Miguel C. Wise* (*Wise II*), No. 17CA1224 (Colo. App. Dec. 6, 2018) (unpublished).   (Doc. # 1-1 at 60).   Mr. Wise did not seek certiorari review in the Colorado Supreme Court.

Mr. Wise initiated this § 2254 proceeding on April 19, 2019.   He asserts the following claims for relief in the Application:

> 1) the state court denied him the Sixth Amendment right to represent himself;
>
> 2) trial counsel was constitutionally ineffective by failing to prepare a "meaningful defense";
>
> 3) trial counsel was constitutionally ineffective by failing to move for a mistrial;
>
> 4) appellate counsel was constitutionally ineffective by failing to raise the trial court's admission of prejudicial character evidence on direct appeal; and
>
> 5) appellate counsel was constitutionally ineffective by failing to raise a Fifth Amendment issue on direct appeal.

(Doc. # 1 at 4-28).

In a Pre-Answer Response, Respondents concede that this action is timely under 28 U.S.C. § 2244(d)(1) and that Mr. Wise exhausted available state court remedies for all of his claims.   (Doc. # 11 at 6).   The case was thereafter drawn to the undersigned.   (Doc. # 15).

The Court addresses the merits of Mr. Wise's claims below.

**II. Applicable Legal Standards**

    **A. 28 U.S.C. § 2254**

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time of the relevant state court decision. *See Greene v. Fisher*, 565 U.S. 34 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision. *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or (b) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent. *Maynard* [*v. Boone*], 468 F.3d [665], 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable

application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision and then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Harrington*, 562 U.S. at 88 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. The court "must defer to the state court's factual determinations so long as 'reasonable minds reviewing the record might disagree about the finding in question.'"

5

*Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Brumfield v. Cain*, ___ U.S. ___, 135 S.Ct. 2269, 2277 (2015)).   Nevertheless, "if the petitioner can show that 'the state courts plainly misapprehend[ed] or misstate[d] the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable.'" *Id*. (alterations in original) (internal quotation marks and citation omitted).

Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the applicant bears the burden of rebutting the presumption by clear and convincing evidence.   "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"   *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller- El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**B. *Pro Se* Litigant**

Mr. Wise is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).   However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."   *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged.   *Associated Gen. Contractors of Cal.*,

*Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not

entitle an applicant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957

(10th Cir. 2002).

## III. Analysis of Claims

### A. Claim 1

Mr. Wise claims that the state trial court deprived him of the Sixth Amendment right to

represent himself in the criminal proceeding. (Doc. # 1 at 4-9).

#### 1. Applicable Supreme Court law

"The Sixth Amendment safeguards to an accused who faces incarceration the right to

counsel at all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004);

*see also United States v. Cronic*, 466 U.S. 648, 653-654 (1984); *Gideon v. Wainwright*, 372 U.S.

335, 344 (1963). The Sixth Amendment also guarantees a criminal defendant the right to

"proceed without counsel when he voluntarily and intelligently elects to do so." *Faretta v.

California*, 422 U.S. 806, 807 (1975); *see also Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (a

valid waiver requires "an intentional relinquishment or abandonment of a known right or

privilege."). The Supreme Court has cautioned that the courts "should indulge in every

reasonable presumption against waiver" of the Sixth Amendment right to counsel. *Brewer v.

Williams*, 430 U.S. 387, 404 (1977).

To invoke the right to self-representation, the defendant must "clearly and unequivocally

declare[ ]" his intention to proceed pro se and must "knowingly and intelligently" waive his right

to be represented by counsel. *Faretta*, 422 U.S. at 835. When a criminal defendant expresses a

clear and unequivocal desire to represent himself, the trial court must make him "aware of the

dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Id.* (internal quotation marks and citation omitted**).**

A criminal defendant must be competent in order to waive his right to be represented by counsel. *See Godinez v. Moran*, 509 U.S. 389, 396 (1993). The trial court may require a defendant to proceed to trial with counsel where the defendant is deemed competent to go to trial, but nonetheless lacks the mental capacity to represent himself. *See Indiana v. Edwards*, 554 U.S. 164 (2008).

### 2. State court proceedings

#### a. trial court

Mr. Wise was initially represented by the Colorado public defender's office. At a hearing in September 2010, counsel raised the issue of Mr. Wise's competency and requested that he be remanded to the Colorado Mental Health Institute at Pueblo (CMHIP) for a competency evaluation. (R., 9/9/10 Hrg. Tr. at 3-5). Counsel explained to the trial court that he has "received some statements from my client and also observations of behaviors that indicate to me that there is a competency issue in this case." (*Id.* at 3). Counsel further stated that he would provide a sealed affidavit to the court in support of his request for a competency evaluation.[2] (*Id.* at 6; *see also* 3/2/10 Hrg. Tr. at 8-9). After counsel requested a competency evaluation, Mr. Wise told the court: "I'm going to invoke my right to proceed without the

---

2  The state court record reflects that defense counsel never submitted a sealed affidavit to the court.

assistance of counsel." (*Id*. at 7). Applicant explained the source of his dispute with counsel as follows:

> You know, this is -- I guess he's trying -- We've already discussed this. This has -- this thing about this going insane or whatever, incompetent whatever, that is – I'm against that, Your Honor. I don't have problems with my head. I mean, what we -- what was happening here is this is -- this is not right.
>
> I mean, I don't understand really what is going on right now, some incompetency thing. . . . He just came and saw me yesterday, and I told him that, you know, it was going to be a basic denial, that's what it was going to be.

(*Id*. at 8). The trial court then interrupted Applicant, asked him not to describe his attorney-client discussions, and explained that the question of competency was different from pleading not guilty by reason of insanity. (*Id*.). The trial court also advised Mr. Wise that "If you want to fire him and proceed on your own, that's a very, very important decision, and it has very severe consequences to you." (*Id*. at 9). The court then suggested that Applicant and his attorney discuss the matter for a few minutes alone. (*Id*.). After speaking to counsel, Mr. Wise again told the court that he "wished to invoke [his] right to proceed without the assistance of counsel." (*Id*. at 10). Defense counsel and the prosecution requested that the court not address the self-representation issue until competency had been determined. (*Id*. at 10-11). The trial court informed Mr. Wise: "Competency has been raised. Your lawyer tells me he has a good faith basis for raising it, so that has to be resolved before I can allow you to proceed without an attorney."[3] (*Id*. at 14).

---

3 While the competency evaluation was pending, Applicant filed *pro se* requests to proceed pro se. (R., Court File at 55-63).

In November 2010, the trial court received a report from Jane Cleveland, a CMHIP psychologist, who opined that Mr. Wise was competent to proceed to trial. (R., 11/19/10 Hr. Tr. at 2; *see also* R., Suppressed Documents, at 16-22). Applicant's public defender told the court that he thought the finding was not correct and was challenging it, but counsel also noted that his request was against the wishes of his client. (*Id.*) Counsel then requested a competency hearing. (*Id.* at 2-3). The trial court made a preliminary finding of competency based on Dr. Cleveland's report, set a trial date, and discussed setting a competency hearing. (*Id.* at 5-7). In response, Mr. Wise argued:

> I understand I don't have an advocate here, Your Honor. I totally object to this competency crap. I mean, I've already had the competency exam, she found me competent. So I haven't even spoke to him so how is he still thinking there's something wrong or whatever.
>
> I don't have an advocate, Your Honor. This is not allowing me due process here. You're allowing this man to have an adversary to me and I have no advocate to speak for me to, you know, rebut his claims. And, I mean, I have no advocate with him doing this. This is outrageous to me.
> And I just ask that this Court at this time allow me to proceed pro se because I don't have an advocate. There's no advocate here.

(*Id.* at 7).

The trial court informed defense counsel that there appeared to be a breakdown in communications between him and Mr. Wise, and because Applicant had been found competent to proceed, the court needed to address that issue. (*Id.* at 8-9). Defense counsel responded that he did not believe there had been a breakdown in communications and that there was no conflict of interest. (*Id.* at 9). Mr. Wise objected that there was a conflict of interest because he had filed a grievance against his attorney and refused to be subject to further "irrational representation" by counsel. (*Id.*).

The trial court then found that there were "irreconcilable differences that have made the communication between [Mr. Wise and the public defender] impossible. (*Id.* at 12). The court told Applicant:

> I know you want to represent yourself, and I don't want to do that yet until you've talked to one more lawyer who is, if you will, outside of this competency issue.
>
> Mr. Wise, these charges are serious, the consequences are serious if you should be found guilty. I think you should have the opportunity to talk to one more lawyer, but I do want the record to be clear, I appreciate Mr. Rodriguez' vigorous representation of you even though you disagree with it. Mr. Rodriguez, you are discharged, thank you for your service.

(*Id.*). The court informed the parties that alternative defense counsel would be appointed the following Monday morning and that "we'll let that attorney take over your case and see how you and the attorney want to proceed." (*Id.* at 13). Applicant did not object to this procedure.

The following week, alternate defense counsel (ADC) appeared in court with Mr. Wise. (R., 11/23/10 Hrg. Tr.). At the pre-trial hearing, ADC addressed the trial court and stated that he had spoken to Mr. Wise about possibly representing him and that Mr. Wise wished to address the court. (*Id.* at 2). Mr. Wise then informed the court that his speedy trial date had been calculated incorrectly. (*Id.* at 2-4). When the trial court asked, "Anything else, Mr. Wise?", Applicant did not reassert his wish to proceed *pro se.* (*Id.* at 4). The court then appointed ADC to represent Mr. Wise, with no objection from Applicant, and reminded ADC that Mr. Wise's previous counsel had challenged the competency finding and requested a hearing. (*Id.* at 6-7). ADC told the court he would review the file, meet with Applicant, and then determine whether to pursue the competency issue. (*Id.* at 8). The court set a hearing to review the competency issue. (*Id.* at 10).

At a pre-trial hearing in March 2011, ADC handed the court a written motion re-raising the question of Applicant's competence based on counsel's determination that Dr. Cleveland's report was "woefully inadequate."  (R., 3/2/11 Hrg. Tr. at 20, 23; *see also* Suppressed Documents at 24-25).   ADC requested an independent competency evaluation.   (*Id.* at 28).   Mr. Wise objected to a second competency evaluation, stating that "[t]here's a major conflict here," and expressing frustration that speedy trial could be tolled again.   (*Id.* at 35-37).   Mr. Wise further stated that counsel had been untruthful in his request for the competency evaluation, and he "plead[ed]" with the court to get the evaluation done before the next trial date.   (*Id.* at 38-39).   The court ordered a second competency evaluation by Dr. Bradley.   (*Id.* at 43; *see also* 3/11/11 Hrg. Tr.).

Dr. Bradley provided the court with a report stating that Mr. Wise had refused to speak to him at the jail, so he was unable to perform a complete evaluation.   (R., 3/25/11 Hrg. Tr. at 3; *see also* Suppressed Documents at 26-27).   Dr. Bradley further stated in the report that he had no reason to disagree with Dr. Cleveland's initial competency evaluation.   (*Id.*).

### b. Colorado Court of Appeals

On direct appeal, the Colorado Court of Appeals rejected Mr. Wise's claim based on the following reasoning:

> B. Factual Background
>
> 1. Requests to Proceed Pro Se
>
> As noted above, at times during the discussion of Wise's competency, he personally objected to the proceedings and asked the court to instead proceed pro se. Wise made such requests:

- When his public defender initially raised the issue of
  Wise's competency;

- During the period in which Dr. Cleveland completed the
  competency evaluation (in a written pleading Wise filed
  entitled "Motion for Leave to Proceed Pro-Se"); and

- After Dr. Cleveland's evaluation concluded that Wise was
  competent and the public defender requested a competency
  hearing, but before the court discharged the public defender
  and appointed an ADC lawyer.

The trial court told Wise multiple times that it would not consider any
request to proceed pro se until after the court determined that he was competent.
But, after the court determined that Wise was competent to proceed, discharged
the public defender, and appointed an ADC lawyer, Wise never again asked to
represent himself.

### 2. Alleged Conflict of Interest

In response to the ADC lawyer's re-raising the issue of Wise's
competency, Wise twice told the court during one hearing that he believed his
ADC lawyer had a conflict of interest. Both representations were made while
Wise was discussing his opposition to any further competency proceedings.
. . .

But, after Dr. Bradley's evaluation was completed and the court
determined that Wise was competent, Wise never again mentioned a conflict with
his ADC lawyer.

### C. Analysis

Both of Wise's Sixth Amendment contentions are rooted in his
disagreement with his attorneys about whether to pursue
competency proceedings. Wise raised both issues only in the
context of expressing his disagreement with his lawyers' raising the
issue of his competency. Because Wise never re-raised either of
these issues after the court determined that he was competent to
proceed, we discern no error.

Generally, when a defendant unequivocally expresses the
desire to proceed pro se, the trial court should conduct an *Arguello*
advisement to explain the risks of proceeding without an attorney

13

and determine whether the defendant has made a voluntary, knowing, and intelligent waiver of the right to counsel. *See People v. Arguello*, 772 P.2d 87, 95-96 (Colo. 1989). Here, however, the court also had an obligation to ensure that Wise was competent before assessing whether he wished to relinquish his right to counsel. *See Godinez v. Moran*, 509 U.S. 389, 396 (1993) ("A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel . . . unless he does so competently and intelligently." (citations and internal quotation marks omitted)); *accord People v. Nagi*, 2014 COA 12, ¶ 17. Hence, the court properly declined to advise Wise about his right to proceed without counsel before determining that he was competent.

Wise's only other request to represent himself occurred just after his public defender challenged the court's initial competency determination and requested a competency hearing. But immediately thereafter, the court discharged the public defender and appointed an ADC lawyer. Because Wise did not express a desire to represent himself at any point after this change in counsel, we conclude that the absence of an advisement about Wise's right to proceed pro se was not error. [State case law citation omitted].

(*Wise I*, Doc. # 11-2 at 15-19).

### 3. AEDPA analysis

The Colorado Court of Appeals applied the correct controlling legal standards of *Faretta* and *Godinez* to deny Mr. Wise relief. Therefore, this Court must decide whether the Colorado Court of Appeals' unreasonably applied *Faretta* and *Godinez* or made an unreasonable determination of the facts.

Mr. Wise asserts in the Application that he "clearly and unequivocally" expressed his desire to represent himself, three times in open court and once in a written motion. As such, he argues, the Colorado Court of Appeals' determination that his Sixth Amendment right to self-representation was not infringed by the trial court's failure to give him an advisement to determine whether his waiver of counsel was knowing and voluntary was an unreasonable

application of *Faretta.*   (Doc. # 1 at 6; *see also* Doc. # 31 at 3).   Mr. Wise maintains that the state appellate court unreasonably construed his failure to reassert his right to represent himself after ADC was appointed as an abandonment of his invocation of the Sixth Amendment right of self-representation; instead, he argues, the state court record reflects that he did not reassert the right because he feared that the trial court would deem him incompetent, have him involuntarily committed or delay his trial.   (Doc. # 1 at 8).   Mr. Wise further asserts that the trial court unreasonably ignored his clear and unequivocal requests to proceed *pro se* based on defense counsels' motions requesting a competency evaluation when there was no legitimate basis before the court to question his competency.   (*Id.* at 8-9; Doc. # 31 at 4).

Although the state court record reflects that Mr. Wise made three clear and unequivocal requests to represent himself, two of the requests were made after his competency was called into question by his first defense counsel (the public defender) and the competency evaluation was pending.   If defense counsel raises as issue about the defendant's competency, even over the defendant's objection, the trial court must address it.   *See United States v. Boigegrain*, 155 F.3d 1181, 1188 (10th Cir. 1999) (recognizing that "the defendant's lawyer is not only allowed to raise the competency issue, but, because of the importance of the prohibition on trying those who cannot understand proceedings against them, []he has a professional duty to do so when appropriate."); *Bryson v. Ward*, 187 F.3d 1193, 1201-02 (10th Cir.1999) (stating that "[d]efense counsel is often in the best position to determine whether a defendant's competency is questionable.").   *See also* Colo.Rev. Stat. §§ 16-8.5-102, 103 (2019). Consequently, although the initial request for a competency evaluation was never substantiated by an affidavit from defense counsel, it was not unreasonable for the trial court to find that counsel had a good faith

15

basis for raising the issue and to proceed with caution, declining to inquire further as to Mr. Wise's request for self-representation while a competency evaluation was pending.

Once the trial court received Dr. Cleveland's report finding Mr. Wise competent to proceed, Applicant again stated that he wished to represent himself.   At that point, the trial court determined that there was a conflict of interest between Mr. Wise and the court-appointed public defender.   Given the conflict, the court told Mr. Wise that he should consult with another attorney before deciding whether to represent himself.   Mr. Wise then spoke to ADC, was afforded the opportunity to object to the appointment of ADC and to reassert his right to self-representation, but he did not express his desire to proceed *pro se* at that time.   After the court appointed ADC, Mr. Wise never again asserted his right to proceed *pro se.*   Moreover, at the time ADC was appointed, the competency issue was not entirely resolved because the public defender's request for a competency hearing to challenge the preliminary finding of competency was being reviewed by ADC.

The Tenth Circuit has recognized that the right to self-representation is not absolute:

> A district court is not obliged to accept every defendant's invocation of the right to self-representation." *United States v. Purnett*, 910 F.2d 51, 55 (2d Cir.1990). In fact, a court may terminate the right to self-representation, or the defendant may waive it, even after he has unequivocally asserted it. *See Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. 2525 ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."); *United States v. Bennett*, 539 F.2d 45, 50-51 (10th Cir.) (holding that the record supported findings that defendant forfeited his right to self-representation by vacillating on the issue), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976); *United States v. Montgomery*, 529 F.2d 1404, 1406 (10th Cir.) (holding that defendant waived right to proceed pro se when he allowed public defender to conduct plea bargaining on his behalf and accepted the benefits of the plea bargaining by pleading guilty to a lesser offense), *cert. denied*, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976); *cf. Wilson v. Gomez*, 105 F.3d 668 (9th Cir.1996) (Table) (holding that defendant waived his right to self-

representation by making equivocal requests regarding self-representation). These cases demonstrate that a waiver or a termination of the right to self-representation may occur without the defendant's knowledge or consent. In fact, a waiver or termination may result merely from the defendant's equivocation. *See Callwood*, 66 F.3d at 1114.

*Munkus v. Furlong,* 170 F.3d 980, 984 (10th Cir.1999).

Because Mr. Wise did not object to the appointment of ADC and the issue of Applicant's competency had been raised by defense counsel and was not fully resolved when Mr. Wise told the trial court he wished to represent himself, the Court finds that the Colorado Court of Appeals' decision was not so lacking in justification that it was beyond all possibility for fair-minded disagreement. The Court therefore concludes that the Colorado Court of Appeals' determination of Mr. Wise's Sixth Amendment claim was not an unreasonable application of *Faretta* or *Godinez.*

Mr. Wise relies on *Moore v. Haviland*, 531 F.3d 393, 402-04 (6th Cir. 2008), for the proposition that the trial court's failure to rule on a defendant's unequivocal request to proceed *pro se* is an unreasonable application of *Faretta.* However, in *Moore*, defense counsel had not raised the issue of the defendant's competency at the time the defendant told the trial court he was electing to proceed *pro se.* As such, *Moore* is distinguishable on its facts.

The Court further concludes that the state appellate court's decision was not based on an unreasonable determination of the facts. Mr. Wise's contention that he did not renew his request to proceed *pro se* at the November 23, 2010 hearing where ADC was appointed because he feared that the trial court would deem him incompetent, have him involuntarily committed, or delay his trial, is not supported by the state court record. Moreover, the trial court's discussion with Mr. Wise at a hearing several days before ADC was appointed indicates that the court

would have considered a renewed request by Applicant to proceed *pro se* after he consulted with ADC.

Mr. Wise is not entitled to federal habeas relief on his first claim.

**B. Ineffective Assistance of Counsel**

In claims two, three, four and five, Mr. Wise maintains that trial and appellate counsel provided constitutionally ineffective assistance.

**1. Evidence presented at Mr. Wise's trial**

The prosecution's case.    The victim and her friend testified to the following events.   On June 10, 2010, Mr. Wise gave the victim some money orders to help him secure an apartment. (R., 4/6/11 Trial Tr., Vivian Young testimony at 48-49; Michelle Palmer testimony, at 111-113). The victim then met with a prospective apartment manager, handed her some of Applicant's money to hold the apartment, and arranged to meet with the manager the following morning to settle the matter.   (*Id.* at 48-50).   On June 11, 2010, before the scheduled meeting, the victim saw Mr. Wise and he told her to "get his money."   (*Id.* at 51-53).   When the victim responded that the manager had moved the meeting to the afternoon, Mr. Wise became angry and demanded that the victim give him back the money orders.   (*Id.* at 53-54).   The victim then called a friend and asked her to get the money orders from the victim's house and bring them to Mr. Wise's apartment.   (*Id.* at 55, 115-117).   When Mr. Wise went outside to meet the friend at her car to get his money, the victim ran out of Mr. Wise's apartment.   (*Id.* at 55-56, 120).   Mr. Wise then chased the victim, demanded the rest of his money, hit her on the forehead with a gun, and pushed her down some stairs.   (*Id.* at 56-58, 120-22).   The victim, followed by Mr. Wise, entered a basement apartment with two young girls inside.   (*Id.* at 59).   While Mr. Wise was

pointing a gun at the victim, a woman tried to intervene and protect her, but Mr. Wise pushed the woman out of the way.   (*Id.* at 60-61).   Mr. Wise then shot the victim inside the apartment. (*Id.* at 61).   The friend heard a gunshot, ran to the basement apartment where the victim was lying on the ground bleeding, and called 911.   (*Id.* at 62, 121-23).   The victim testified on cross exam that the friend returned only $500 of the $750 worth of money orders to Mr. Wise because the victim intended to give the remainder to the prospective apartment manager.   (*Id.* at 70-72). The victim further admitted that she had been drinking and smoking pot on the day of the shooting; that her trial testimony was inconsistent with some of her statements to the police; and, that she had a prior felony conviction for taking money that belonged to someone else.   (*Id.* at 81-95).

Two teen-age girls, R.N. and B.I., were in the basement apartment when the victim and Mr. Wise entered the apartment.   R.N. heard the victim screaming "I already gave you money" and Mr. Wise responded, "I will kill you today."   (R., 4/5/11 Trial Tr., R.N. testimony at 31-33). R.N. testified that Mr. Wise pushed her, told her to get out of his way, pulled a gun out of his pants, shot the victim while the victim was pleading with him not to shoot her, and then ran out of the apartment laughing.   (*Id.* at 35-40).   B.I.   testified that a woman came into the apartment screaming, with Mr. Wise behind her.   (*Id.*, B.I. testimony, at 76-77).   Mr. Wise was hitting the victim and she kept saying "I didn't take no money from you."   (*Id.* at 81).   B.I. testified that she left the apartment, heard a single gunshot, and Mr. Wise ran out of the apartment.   (*Id.* at 84-85).   On cross exam, the girl testified that she saw Mr. Wise pull a gun out of his pants and shoot the victim before she ran out of the apartment to get help.   (*Id.* at 86). The mother of one of the girls testified through an interpreter that a man came into her apartment

pushing the victim with a gun in his hand, she ran out to call the police, and then heard a "loud noise" from inside the apartment. (R., 4/6/11 Trial Tr., Falida Miyonkuru testimony, at 39, 41).

The victim's boyfriend testified that on the morning of June 11, 2010, Mr. Wise called him looking for the victim, stating that if the victim did not return his money he was going to shoot her. (*Id.*, Jeffrey Cunnigan testimony, at 9-10). The boyfriend talked to Mr. Wise on the phone later that day and asked him why he shot the victim. (*Id.* at 14). Mr. Wise responded: "f--- you, pussy. When I see you I'm f---ing you up too." (*Id.*).

A police officer who responded to the 911 call testified that the victim had been shot in the area of her left hip and had an injury to her left forehead. (*Id.*, Cindy Lengyel testimony, at 140-46).

The videotaped police interview of Mr. Wise was also admitted into evidence. (R., 4/5/11 Trial Tr., Chuck Mehl testimony, at 66-67; People's Ex. 20). During the police interview, Mr. Wise stated that he gave the victim some money orders to help him secure an apartment and then asked for the money back because he believed that the victim was trying to "rob" him, but he maintained that he did not possess a gun and had no knowledge of the victim being shot on June 11, 2010. (People's Ex. 20).

The defense case: Mr. Wise testified in his own defense. He told the jury that he asked the victim, who was his cousin, to help him secure a new apartment because he was being evicted and that he gave her three money orders for that purpose on June 10, 2011. (R., 4/7/11 Trial Tr. at 36-40). The next morning, the victim told Mr. Wise at approximately 8:00 a.m. that they would meet the prospective apartment manager at 11:00 am, but Mr. Wise later became concerned about his money and called the victim's boyfriend looking for the victim. (*Id.* at 42-

44).   The victim called Mr. Wise around 10:30 a.m. and told him that the meeting with the

prospective apartment manager had been rescheduled to 4:00 p.m.   (*Id.* at 46-48).   The victim

then came over to Mr. Wise's apartment to hang out until the 4:00 p.m. meeting.   (*Id.* at 48).

Mr. Wise stated that because the victim had been drinking and was acting jittery, he told her to

return the $750 in money orders that she was holding for the apartment manager.   (*Id.* at 48-49).

The victim's friend then came over with two of the three money orders.   (*Id.* at 50-51).   When

Mr. Wise went outside to meet the friend at her car, he realized that a $200 money order was

missing, along with the $100 in cash he had given the victim to compensate her for assisting him

in securing a new apartment.   (*Id.* at 51).   At the same time, the friend asked: "why is she

running?"   (*Id.* at 51).   Mr. Wise looked around and saw the victim running away from his

apartment so he chased her.   (*Id.*).   When Mr. Wise caught up with the victim, he asked her

where the rest of his money was, reached for her pocket, and when the victim slapped his hand

away, he punched her, causing her to stumble down the stairs.   (*Id.* at 52).   Mr. Wise then

followed the victim into a basement apartment, from which a woman and two girls had just left.

(*Id.* at 52-54).   Mr. Wise testified that he was trying to search the victim's pockets for his money

and she was pushing back; the victim grabbed the handle of the gun that was in his pants pocket,

a "tussle" ensued; the gun discharged, and the victim fell to the ground.   (*Id.* at 55-56).   Mr.

Wise then left with the gun and returned to his apartment, passing the victim's friend who was

running to the basement apartment.   (*Id.* at 58).   Mr. Wise stated that he did not purposefully

shoot the victim, but he thought that she was hiding his money and wanted it back.   (*Id.* at 59-

60).   He further testified that he always carried a gun with him because he had been shot in the

head once.   (*Id.* at 41-42).

On cross exam, Mr. Wise admitted that he made several inconsistent statements to the police during his videotaped interview, including that he was not in possession of a gun on the day the offenses occurred and did not see the victim after the friend returned his money orders. (*Id.* at 60-74). Mr. Wise also admitted telling the Detective that he was a crack dealer but testified that was not the reason he carried a gun. (*Id.*at 65).

The defense expert in forensic pathology testified that the victim suffered four superficial, irregular wounds to her left side in a linear pattern, which indicated a gunshot entered the victim's body and may have tumbled out and gone back in and out again. (R., 4/7/11 Trial Tr., Michael Doberson testimony, at 18-23, 25).

A police officer testified that the victim's friend told him that the victim initially planned to keep some of Mr. Wise's money for herself, but when the victim later asked the friend to bring the money orders to Mr. Wise, the friend returned both money orders that were in the victim's purse. (R., 4/7/11 Trial Tr., Thomas Sobieski testimony, at 5, 9).

## 2. Ineffective assistance of trial counsel claims

### a. applicable Supreme Court law

The Sixth Amendment generally requires that defense counsel's assistance to the criminal defendant be effective. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that (1) his counsel's performance was deficient (i.e., that identified acts and omissions were outside the wide range of professionally competent assistance), and (2) he was prejudiced by the deficient performance (i.e., that there is a reasonable probability that but for counsel's unprofessional errors the result would have been different). *Id.*

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). *See also Wiggins v. Smith*, 539 U.S. 510, 521 (2003). In other words, there is a rebuttable presumption that "an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct might have been part of a sound trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (emphasis omitted). "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The federal habeas court's review of the state appellate court's disposition of an ineffective assistance claim under the AEDPA is "doubly deferential." *Cullen,* 563 U.S. at 190. The court "defer[s] to the state court's determination that counsel's performance was not deficient and, further, defer[s] to the attorney's decision in how to best represent a client." *Grant v. Royal*, 886 F.3d 874, 903 (10th Cir. 2018) (internal quotation marks and citations omitted).

"With respect to prejudice, . . . '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 693.

Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009).

**b. claim two**

Mr. Wise argues that trial counsel failed to put forth a meaningful defense because counsel tendered the affirmative defense instruction of "defense of property," which directly contradicted Applicant's sworn testimony describing the shooting as an accident.   (Doc. # 1 at 10).   Mr. Wise asserts that he was prejudiced by counsel's deficient performance because there was no rational basis in the evidence for the affirmative defense.   (*Id.*).

### i. trial court proceeding

During trial, defense counsel requested an instruction on the affirmative defense of "defense of property."   (R., 4/7/11 Trial Tr. at 96).         The trial court found that the "defense of property" instruction was warranted based on Mr. Wise's testimony that he "was still pursuing the $100 cash and the $200 security deposit when he chased Ms. Young, that he is entitled to this defense with regard to defense of property" and that the affirmative defense did not "specifically contradict" Mr. Wise's trial testimony that the shooting was an accident.   (R., 4/7/11 Trial Tr. at 98).

Defense counsel argued in closing that the testimony of the prosecution witnesses was not credible and was inconsistent with the physical evidence, but that the physical evidence supported Mr. Wise's testimony that the gun discharged accidentally.   (*Id.* at 132-137). Counsel emphasized that there was no evidence to support a finding that Mr. Wise intended to kill the victim**.**   (*Id.* at 137).   Counsel then argued:

> So not let's think about why the affirmative defense is important.   The affirmative defense is most important on the burglary count because it's clear, [Mr. Wise] did not have permission to go into that apartment.   He admits it, we admit it.   But the point is that he has a right, he has a right to use a reasonable degree of force to protect his properly.
>
> . . .

So he went into that apartment for one reason. He went in there to get his money. He did not go in there to assault her, that was not his intent when he entered into that apartment. He did not go in there to assault her in any way. The assault occurred that he admitted to outside the apartment when he went into that apartment, it was for the purpose of getting his money.

And he had a right -- that is not the crime of assault -- he had a right to use a reasonable degree of force, which he did when he went for her pockets to get his money back.

So this was not a burglary. So it was no doubt it was not an attempted murder. It was not a burglary because they cannot prove that he went in there with the intent to assault her.   And I would submit, it was not a second-degree assault.

(*Id.* at 138-39).

In Instruction No. 19, the jury was instructed, in relevant part:

It is an affirmative defense to the crimes of Criminal Attempt to Commit Murder in the First Degree, First Degree Burglary, and Assault in the Second Degree that the defendant acted in Defense of Property.

A person is justified in using reasonable and appropriate physical force upon another person when and to the extent that he reasonably believes it is necessary to prevent what he reasonably believes to be an attempt by the other person to commit theft.

(R., Court File at 207).   *See also* Colo. Rev. Stat. § 18-1-706 (2019).

### ii. Colorado Court of Appeals' decision

The Colorado Court of Appeals applied the *Strickland* standard and rejected the claim on

the following grounds:

 "[W]e conclude that defendant's allegations, if true, were not sufficient to demonstrate that counsel provided deficient performance.   *See Strickland*, 466 U.S. at 689-90 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."); *Ardolino* [v. *People*], 69 P.3d [73,] 78 [(Colo. 2003)] ("To establish ineffective assistance, the defendant was required to overcome the

presumption that, under the circumstances, the challenged conduct of his counsel might be considered sound trial strategy.").

(*Wise II,* Doc. # 24-1, at 3-4, 12-13).

### iii. AEDPA analysis

Mr. Wise argues that setting forth inconsistent defense theories was not a reasonable trial strategy and that the defense of property instruction undermined his claim of innocence, which impacted his credibility with the jury, and caused the jury to return guilty verdicts.

"Whether to raise a particular defense is one aspect of trial strategy, and informed strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong." *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) (internal quotation marks and citation omitted). Under Colorado law, a criminal defendant who maintains his innocence throughout a trial may nevertheless receive an inconsistent jury instruction on an affirmative defense provided there is a rational basis for the instruction in the evidentiary record. *People v. Wakefield*, 428 P.3d 629, 644-48 (Colo. App. 2018) (defendant's testimony that he had pulled gun "up and away" from victim during altercation, and thus that shooting victim was accidental, did not preclude self-defense instruction). *Accord Brown v. People*, 239 P.3d 764, 769-70 (Colo. 2010) (partial defense of involuntary intoxication was not precluded by innocence defense). The quantum of evidence necessary for giving an affirmative defense instruction is "a scintilla of evidence, or some evidence." *People v. Saavedra-Rodriguez*, 971 P.2d 223, 228 (Colo. 1998).

Mr. Wise's trial testimony could have allowed the jury to rationally find that he either shot the victim accidentally or that the gun discharged as a result of his holding it in defense of

property, and either theory could have resulted in an acquittal.   "[T]here was at least some evidence indicating that [Mr. Wise] *acted* in [defense of property], even though he maintain[ed] that the actual firing of the weapon was unintentional."   *Wakefield*, 428 P.3d at 647-48 (Emphasis in the original).

Under the doubly-deferential standard this Court must apply to an ineffective assistance of counsel claim adjudicated by the state court, the Court finds that fair-minded jurists could disagree about whether the Colorado Court of Appeals' determination of the ineffective assistance claim was inconsistent with *Strickland*.   The Court further concludes that the state appellate court's decision was based on a reasonable determination of the facts.

Mr. Wise is not entitled to federal habeas relief for his second claim.

### c. claim three

Mr. Wise contends that trial counsel was constitutionally ineffective in failing to move for a mistrial "after the trial court admitted extremely unfair and prejudicial bad character evidence in the guise of impeaching Mr. Wise's trial testimony and expressly invited the trial court's erroneous and misleading limiting instruction."   (Doc. # 1 at 14).

### i. trial court proceeding

Before trial, the parties agreed to exclude any evidence about the Applicant's use or sale of drugs as irrelevant and unduly prejudicial.[4]   (R., 3/28/11 Hrg. Tr. at 52-53).   During trial, Mr. Wise testified on direct examination that he carried a gun with him at all times to protect

---

4 For trial, the prosecution redacted the portion of Applicant's videotaped interview with Detective Mehl in which he admitted that he was a crack dealer.   (R., 4/7/10 Trial Tr. at 61-62).

himself because he had once been shot in the head. (R., 4/7/10 Trial Tr. at 41). At the beginning

of cross examination, the prosecution told the court during a bench conference that Mr. Wise had

"opened the door" to questioning about why he carried a gun—i.e, because he was a drug dealer.

(*Id.* at 61). Defense counsel vehemently objected to the admission of the evidence as a

"collateral issue" that was "unduly prejudicial." (*Id.* at 61-63). The following colloquy then

occurred between the court and defense counsel:

> THE COURT: But I acknowledge, Mr. Bloch, it is a leap because he
> doesn't reference a gun when he's talking to Detective Mehl, but it is general
> knowledge that somebody who is engaged in narcotics distribution is usually
> armed to protect themselves for any number of reasons. The prejudice is strong,
> I acknowledge that. I would propose -- here's what I would propose. I would
> propose to give the jury a limiting instruction that this is only being considered
> with regard to Mr. Wise's credibility, not with regard to whether or not Mr. Wise
> did the crimes that are alleged here.

> MR. BLOCH: Judge, I have to tell you, I mean, I'm kind of shocked at
> this. I mean, there's nothing -- there's just nothing that we did to open up the door
> to his being a drug dealer.

> Now, if the Court is going to rule that way, then I have nothing to say, but
> I believe that it's, first of all, I believe it's a mistrial and I think that by
> introducing evidence of this person's criminal activity, which is character
> evidence of bad acts, to imply that he's lying about having gotten shot in the head,
> I mean, I can't change the Court's ruling, but it's incredibly unfairly prejudicial to
> Mr. Wise who is taking the stand in his own defense to explain the shooting to
> then bring in under the guise of impeaching him under totally collateral issues, to
> bring in prior criminal conduct. But if that's your ruling, then that's the ruling.

> THE COURT: Mr. Plattner, I have to note, it's a very close question. It is a
> very close question.

(*Id.* at 63-64).

The prosecutor then cross-examined Mr. Wise about his statement to Detective Mehl that

he was a crack dealer. (*Id.* at 65). Mr. Wise admitted that he told Detective Mehl he was a

crack dealer but stated that was not the reason he carried a handgun. (*Id.*). The court instructed

the jury:

> Ladies and gentlemen, you are instructed with regard to those questions, that they cannot be considered by you with regard to any evidence concerning the pending charges against [defendant]. That evidence is only offered for your consideration with regard to [defendant's] credibility. They can be used for that reason and for no other reason.

 (*Id.* at 66).

During closing argument, defense counsel emphasized that Mr. Wise's testimony was

consistent with the physical evidence, in contrast to the testimony of the prosecution witnesses.

(R., 4/7/11 Tr. at 128-140). During rebuttal closing argument, the prosecutor stated:

> Now, Mr. Bloch in his argument would have you believe whatever positive information came out of the testimony of Miguel Wise as to what happened in 1166 Yosemite. Consider the source. He admitted to you that he lied like a rug to Detective Mehl, yet what he told you when he took the stand today, after listening to everybody else testify, somehow or another has become the gospel and that is now believable?

> Consider the source. He's a convicted felon. Consider the fact that he told Detective Mehl he hasn't had a gun for 20 years, but what he did admit was that he was a crack dealer.

(*Id.*at 141-42). Defense counsel objected that the prosecutor made an impermissible comment

on the Mr. Wise's character: "This was a general statement that you can't believe a drug dealer,

which now moves from credibility to character evidence, and that was a danger of admitting it

and I think it is now being magnified." (*Id.* at 142-43). The court responded, "Well, I don't

hear you moving for a mistrial." (*Id.*). Defense counsel replied: "I don't, in all honesty, think

it rises to a mistrial. I think it rises to an admonition to disregard or give a limiting instruction

again." (*Id.*). The court then gave the following limiting instruction to the jury:

Ladies and gentlemen, with regard to [the prosecutor's] reference of [defendant] being a crack dealer, I want to remind you that when that evidence came in, I gave you what's called a limiting instruction. That instruction said that that evidence was only being offered with regard to assessing [defendant's] credibility, it is in no way what we call substantive evidence as to the pertinent charges that are before you at this point in time. And I want to remind you of that caution.

(*Id.* at 143-44).

## ii. Colorado Court of Appeals' decision

The Colorado Court of Appeals applied the *Strickland* standard and resolved Mr.

Wise's claim on the following grounds:

In his postconviction motion, defendant asserted that trial counsel failed to make a "proper irrefutable objection" to the admission of, and to the prosecutor's reference to, the drug dealer evidence. . . .

Initially, we are not convinced that defendant's allegations, if true, established that trial counsel performed deficiently in his objections to the drug dealer evidence. *See* [*People v.*] *Bossert*, 722 P.2d [998,] 1010 [(Colo. 1986)].

Additionally, we conclude that defendant's allegations, if true, were insufficient to demonstrate that he was prejudiced by the admission of the drug dealer evidence . . . . The trial court explicitly instructed the jury, twice, not to consider the drug dealer evidence as substantive evidence of the charges crimes but rather that it could be used solely to assess defendant's credibility. *See People v. Carter*, 2015 COA 24M-2, ¶ 59 ("Absent evidence to suggest otherwise, we presume that the jury followed [it's] instructions.").

Furthermore, we are convinced that the trial evidence, excluding the drug dealer evidence, supplied overwhelming proof of defendant's guilt, as described above. *See People v. Romero*, 2015 COA 7, ¶¶ 48-50.

(*Wise II,* Doc. # 24-1, at 3, 16-17).

In support of its finding that the evidence of Mr. Wise's guilt was overwhelming, the

court stated: "The record shows that . . . [s]ix prosecutorial witnesses and two 911 recordings

supported the prosecution's theory that, during a dispute over money, defendant chased the

victim into a third party's apartment and shot her."   (*Id.* at 9-10).                                   **iii. AEDPA**

**analysis**

Mr. Wise argues in the Application and Reply that counsel should have moved for a

mistrial when the court improperly admitted the evidence that he was a drug dealer, and that he

was prejudiced by counsel's failure to do so, regardless of the trial court's limiting instruction to

the jury, because the evidence against him was not "overwhelming" as described by the

Colorado Court of Appeals.   Mr. Wise maintains that the prosecution witnesses' testimony was

inconsistent with the physical evidence, as explained by the defense expert in forensic pathology,

who testified that the victim suffered four superficial, irregular wounds to her left side in a linear

pattern, which indicated a gunshot entered the victim's body and may have tumbled out and gone

back in and out again.[5]   According to Mr. Wise, the pattern of the victim's wounds indicated

that the gun was pointing downward when it discharged and does not support an inference that

he intended to kill the victim.   Mr. Wise maintains that his testimony that the shooting was an

accident would likely have been credited by the jury had the highly prejudicial bad character

evidence that he was a drug dealer not been admitted.

(Doc # 1 at 14-21; Doc. # 31 at 11-16).

The state court record demonstrates that during cross examination of Mr. Wise, defense

counsel vociferously objected to the admission of evidence that Applicant was a drug dealer,

arguing that it would require a mistrial.   However, the trial court disagreed, concluding that the

evidence was relevant to Mr. Wise's credibility about why he was carrying a gun and that the

---

[5] *See* R., 4/7/11 Trial Tr. at 16-25.

prejudicial effect of the evidence could be ameliorated by a limiting instruction. The trial court ruled, over defense counsel's objection, that the evidence was admissible and gave the jury a limiting instruction. Mr. Wise fails to demonstrate that counsel's failure to move for a mistrial after the court gave the jury a limiting instruction constituted deficient performance or that he was prejudiced as a result. It is clear from the state court record that the trial court would have denied the motion.

Following the prosecution's comment in rebuttal closing argument that Mr. Wise was not credible because he was a drug dealer, defense counsel objected that the prosecutor made an improper comment about Mr. Wise's character, as opposed to his credibility. The trial court then repeated the limiting instruction to the jury at defense counsel's request. The prosecutor's comment was isolated and somewhat ambiguous. Further the trial court already ruled that the drug dealer evidence was admissible for the purpose of considering Mr. Wise's credibility. Mr. Wise fails to demonstrate that counsel's treatment of the prosecutor's comment about him being a drug dealer fell below an objective standard of reasonableness.

Moreover, Mr. Wise has not established a reasonable probability that the trial court would have granted a defense motion for mistrial following the prosecutor's comment. Under Colorado law, a "mistrial is the most drastic of remedies that should only be granted when the prejudice to the accused is too substantial to be remedied by other means." *People v. Santana*, 255 P.3d 1126, 1132 (Colo. 2011). The jury was twice instructed that the evidence about Mr. Wise being a drug dealer was to be considered only for the purpose of assessing Mr. Wise's credibility. The law presumes that jurors will follow their instructions. *See Richardson v.*

*Marsh*, 481 U.S. 200, 206 (1987) ("It is an "almost invariable assumption of the law that jurors follow their instructions.").

In light of the substantial evidence of Mr. Wise's guilt presented at trial, Applicant has failed to show that he was prejudiced by defense counsel's failure to request a mistrial after rebuttal closing argument. Mr. Wise's speculation that the jurors convicted him based on evidence that he was a drug dealer is insufficient to warrant relief under *Strickland*. *See Strickland*, 466 U.S. at 693. *See also Ellis v. Raemisch*, 872 F.3d 1064, 1084 (10th Cir. 2017) (mere speculation that a defendant has been prejudiced by counsel's conduct is insufficient under *Strickland*).

The Court finds that the Colorado Court of Appeals' determination of Mr. Wise's ineffective assistance claim was a reasonable application of *Strickland*. The Court further finds that the state appellate court's factual finding that the evidence of Applicant's guilt was "overwhelming" was reasonable based on the evidence presented at trial, as set forth in Section III.B.1, *infra*. The testimony of five prosecution witnesses directly supported the prosecution's claim that Mr. Wise intentionally shot the victim. Contrary to Mr. Wise's assertion, the physical evidence did not directly contradict the testimony of the prosecution witnesses. The fact that the victim suffered superficial injuries from the shooting does not refute the witnesses' testimony. Moreover, although Mr. Wise's testimony that the gun discharged accidentally was consistent with the physical evidence, his credibility was in question based on his admissions during cross examination that he made false statements to the police about the events that occurred on the day of the shooting. At a minimum, reasonable minds could disagree about

how to interpret the evidence as a whole; therefore, the Colorado Court of Appeals' factual determination was not objectively unreasonable.

Mr. Wise is not entitled to federal habeas relief for his third claim.

### 3. Ineffective assistance of appellate counsel

#### a. applicable Supreme Court law

The two-part standard set forth in *Strickland v. Washington* applies to claims of ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that "the proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*"). The applicant must show, under the first prong of *Strickland*, "that [appellate] counsel unreasonably failed to discover [a] nonfrivolous issue[ ] and to file a merits brief raising [it]." *Smith*, 528 U.S. at 285. *See also Cargle v. Mullin*, 317 F.3d 1196, 1205 (10th Cir. 2003) ("The very focus of a *Strickland* inquiry regarding performance of appellate counsel is upon the merits of omitted issues, and no test that ignores the merits of the omitted claim in conducting its ineffective assistance appellate counsel analysis comports with federal law."). The Supreme Court has recognized that "appellate counsel who filed a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

Under the second prong of *Strickland*, the applicant "must show a reasonable probability that, but for his counsel's unreasonable failure to" raise a particular nonfrivolous issue, "he would have prevailed on his appeal." *Smith*, 528 U.S. at 285.

#### b. claim four

In claim four, Mr. Wise contends that appellate counsel was constitutionally ineffective in failing to raise the issue of the trial court's improper admission of prejudicial character evidence on direct appeal.   (Doc. # 1 at 22-23).

The Colorado Court of Appeals rejected this claim under the prejudice prong of the *Strickland* inquiry:

> [W]e conclude that defendant's allegations, if true, were insufficient to demonstrate that . . . the result of the appellate proceeding would have been different had counsel challenged the court's evidentiary ruling.   *See* [*People v.*] *Gandiaga*, 70 P.3d [523,] 526 [(Colo. App. 2002)]; *see also* [*People v.*] *Long*, 126 P.3d [284,] 286 [(Colo. App. 2005)]. The trial court explicitly instructed the jury, twice, not to consider the drug dealer evidence as substantive evidence of the charged crimes but rather that it could be used solely to assess defendant's credibility.   *See People v. Carter*, 2015 COA 24M-2, ¶ 59 ("Absent evidence to suggest otherwise, we presume that the jury followed [it's] instructions.").

> Furthermore, we are convinced that the trial evidence, excluding the drug dealer evidence, supplied overwhelming proof of defendant's guilt, as described above. *See People v. Romero*, 2015 COA 7, ¶¶ 48-50.

(Doc. # 24-1 at 16-17).

In light of the court's limiting instructions to the jury and the substantial evidence of Mr. Wise's guilt, there is no reasonable probability that the outcome of Mr. Wise's appeal would have been different had appellate counsel argued that the trial court erred in admitting evidence that Mr. Wise was a drug dealer.   *See Neill v. Gibson*, 278 F.3d 1044, 1062 (10th Cir. 2001) (finding no prejudice in appellate counsel's failure to raise a claim when there was no reasonable probability that Neill would have prevailed on direct appeal had the issue been raised); *Hooks v. Ward*, 184 F.3d 1206, 1222 (10th Cir. 1999) (rejecting claim of ineffective assistance of appellate counsel because the applicant's claim was not "clearly meritorious").

The Court finds that the Colorado Court of Appeals' determination of Mr. Wise's claim was reasonable under *Smith v. Robbins* and *Strickland.*

Mr. Wise is not entitled to federal habeas relief for claim four.

### c. claim five

Mr. Wise maintains that appellate counsel was constitutionally ineffective in failing to raise a Fifth Amendment issue on direct appeal. Specifically, Mr. Wise contends that appellate counsel should have argued that the trial court erred in denying his motion to suppress statements made during the videotaped police interview because Applicant "unambiguously articulated a desire to refrain from incriminating himself" but the interrogating officer ignored his invocation of the right to remain silent. (Doc. # 1 at 24).

### i. trial court proceeding

Before trial, defense counsel moved to suppress Mr. Wise's videotaped statements to the police on the ground that the statements were made after he invoked his Fifth Amendment right to remain silent; or, alternatively, on the ground that Applicant's waiver of his Fifth Amendment right was not knowing and voluntary. (R., Court File at 49-51; *see also* 3/28/11 Hrg. Tr. at 8-31).

The videotaped police interview reflects that the detective gave Mr. Wise a *Miranda* advisement at the beginning of the interview and Mr. Wise indicated that he understood his rights and was waiving them. (*See* People's Ex. 20). The detective then asked Mr. Wise some background and housekeeping questions, which Mr. Wise answered. (*Id.*). When the detective began to question Mr. Wise about the events of June 11, 2010, Mr. Wise responded that the victim tried to "rob" him, that he did not want to talk about it, and that the detective should talk

to the victim about what happened.   (*Id.*).   The detective continued to question Mr. Wise about

the events of June 11, 2010 and Mr. Wise answered questions about his interactions with the

victim up to the time that he left his apartment to meet the victim's friend at her car and get his

money orders back.   (*Id.*).   Mr. Wise told the detective that he never saw the victim again that

day and did not shoot her.   (*Id.*).   Mr. Wise further told the detective that he does not have a

gun.   (*Id.*).   At that point, Mr. Wise stated:   "I'm sorry I can't be more open with you, Sir, but I

just can't right now, you know, it's not good for me."   (*Id.*).   (For purposes of People's Ex. 20,

the interview then concluded).

> The trial court denied the motion to suppress on the following grounds:

> I find in this interrogation that a *Miranda* advisement was given. I tend to
> agree with the defense, it was given rather quickly with the introduction that
> you've 20 seen this 1,000 times on—in the movies, but Mr. Wise answered. Do
> you understand you have the right to remain
> silent, he answered each of them, I do, and then indicated his willingness to talk
> with the detective.

> The conversation was about 41 minutes or so in length and the
> conversation never gives any indication that Mr. Wise wants to reassert his rights.

> Mr. Plattner is correct, I believe the law is that a person wants to stop an
> interrogation must do so in some type of unequivocal indication. But here I
> disagree with the defense argument, Mr. Wise was engaged in a conversation.

> The question arises as to whether or not there is indications in here of
> mental health issues and I would say no, there are not to a layperson. I reference
> this interrogation when I requested a second competency evaluation because I had
> additional information, but when I just saw the
> DVR and completed it, I had no questions with regard to Mr. Wise's mental
> capacity.

> And so the argument is made that he did not intelligently and knowingly
> waive his *Miranda* rights. I would respectfully disagree and I would so find that
> he did knowingly and intelligently waive his *Miranda* rights. There was no
> indication in this 41 minutes that he was not engaged

in a coherent conversation with regard to some positions he took.

> This is a police interrogation about a very, very serious act and people in the course of human events do all types of somewhat strange things in that type of a pressure situation, being interrogated by a homicide detective about an attempted first-degree murder, and so I just don't see anything in the interrogation that would allow me to find under the law that it was not a knowing, intelligent conversation, and likewise, I don't find that the gentleman ever indirectly makes more than an indirect -- but he did not even indirectly assert that he wanted to stop the interrogation.

(R., 3/28/11 Hrg. Tr. at 42-44).

### ii. Colorado Court of Appeals' decision

In *Wise II*, the Colorado Court of Appeals resolved Mr. Wise's claim on the following grounds:

> Defendant asserted that appellate counsel was ineffective in *Wise I* for failing to challenge the trial court's order denying the motion to suppress the police interrogation recording. He argued that, had counsel asserted this claim, the division of this court "would have likely found [his] Fifth Amendment right was violated" because, after waiving his *Miranda* rights, he made "unequivocal statements meant to invoke his right to cease further questioning" and the right against self-incrimination, which were ignored.

> We conclude that defendant's allegations, even if true, were insufficient to establish deficient performance or prejudice resulting from appellate counsel's representation.

> Defendant presented no argument explaining why a challenge to the trial court's denial of his motion to suppress was clearly stronger than the claims actually asserted in his direct appeal. *See Long*, 126 P.3d at 286.

> Moreover, his allegations did not demonstrate a reasonable probability that, if appellate counsel had raised a challenge to the denial of his motion to suppress in *Wise I*, the division would have reversed his convictions. Specifically, we are not convinced that the division would have concluded that the alleged error in admitting the recorded interrogation was sufficiently prejudicial to warrant reversal (i.e., the error was not harmless beyond a reasonable doubt). *See People v. Davis*, 2018 COA 113, ¶ 18.

In addressing whether the erroneous admission of statements was harmless beyond a reasonable doubt, "an appellate court should consider a number of factors, including the importance of the statements to the prosecution's case, whether the statements were cumulative, and the overall strength of the prosecution's case." *People v. Melanson*, 937 P.2d 826, 833 (Colo. App. 1996).

The recorded interrogation here did not supply direct evidence of defendant's guilt. As he stated in his motion, defendant in the interrogation consistently denied any involvement in the shooting; thus, he argued in his motion that the video's "content was wholly irrelevant and collateral to defendant's guilt." *See Davis*, ¶¶ 22, 24 (even assuming the defendant's statements were erroneously admitted, the error was harmless beyond a reasonable doubt because, among other things, the defendant consistently denied involvement in the most serious offense).

Furthermore, the record shows that the evidence of defendant's guilt, excluding the recorded interrogation, was overwhelming. Six prosecutorial witnesses and two 911 recordings supported the prosecution's theory that, during a dispute over money, defendant chased the victim into a third party's apartment and shot her. *See Melanson*, 937 P.2d at 833 (The admission of defendant's statements was harmless beyond a reasonable doubt because "[t]he evidence admitted at trial sufficiently linked [the] defendant to the victim and the prosecution met its burden by demonstrating that [the] defendant's statements . . . did not contribute to his conviction."); *see also Davis*, ¶2 25-29 (Any error in the trial court's denial of the defendant's motion to suppress his statements "was harmless beyond a reasonable doubt in light of the relative insignificance of the statements to the People's case and the substantive evidence of guilt.").

(Doc. # 24-1 at 7-10).

### iii. AEDPA analysis

The Colorado Court of Appeals did not address whether a constitutional error occurred in the admission of Mr. Wise's videotaped statements to the police; instead, the state appellate court assumed that any such error was harmless, and therefore, counsel's failure to raise the alleged constitutional violation as an issue on direct appeal did not result in any prejudice.

The state court record reflects that the prosecution previewed Mr. Wise's statements to the police in its opening statement, telling the jury that Mr. Wise told the police that he did not

possess a gun and did not know anything about the victim getting shot. (R., 4/4/11 Trial Tr. at 152). Mr. Wise testified at trial that he did possess a gun and carried it with him because he had been shot in the head once. Mr. Wise further told the jury that he and the victim got into an argument about whether she was attempting to steal his money, and that a physical struggle for the gun ensued, which caused the gun to discharge accidentally. The prosecutor then cross-examined Mr. Wise extensively on his prior inconsistent statements to the police. In closing, the prosecutor relied on the testimony of the prosecution witnesses to support a verdict of guilty on the charged offenses. However, after defense counsel argued that the Applicant's version of events was more credible because it was consistent with the physical evidence, the prosecutor emphasized in rebuttal closing argument that Mr. Wise "admitted to you that he liked like a rug to Detective Mehl" and his version of events was not credible. (R., 4/7/11 Trial Tr. at 141-42). The prosecutor also told the jury:

> So, ladies and gentlemen, there's some fairly clear choices that you have to make concerning this testimony, you know, because the defendant has admitted it, that he lied to Detective Mehl. And what you are being asked to do is, in essence, find that despite the fact that he lied then, whatever he told you today is true, and that because he said it today, all these other witnesses must be mistaken, lying, misperceived, something, but whatever they told you is not credible and is not sufficient for you to find the defendant guilty beyond a reasonable doubt.

(*Id.* at 149).

Undoubtedly, Mr. Wise's statements to the detective that he did not possess a gun and was not in contact with the victim at the time she was shot damaged Mr. Wise's credibility before the jury. However, Applicant's trial testimony that the shooting was an accident was contradicted by the testimony of numerous prosecution witnesses, three of whom had no relationship with the victim or Mr. Wise. Even without the admission of his statements to the

police, Mr. Wise's testimony was not likely to persuade the jury to acquit him. Therefore, Mr. Wise has failed to show a reasonable probability that the Colorado Court of Appeals would have reversed his convictions had the Fifth Amendment issue been raised on appeal. *See Littlesun v. Parker*, No. 10-5023, 380 F. App'x 758, 761 (10th Cir 2010) (unpublished) (concluding that petitioner was not entitled to habeas relief for his claim that his Fifth Amendment privilege against self-incrimination was infringed where reasonable jurists could not debate the state appellate court's harmless error conclusion because "there was so much other evidence in the record to support the trial court's finding of guilt beyond a reasonable doubt.").

The Court finds that the Colorado Court of Appeals' resolution of the ineffective assistance of appellate counsel claim comported with *Strickland* and *Smith* and was based on a reasonable determination of the facts in light of the evidence presented at Mr. Wise's trial.

Mr. Wise is not entitled to federal habeas relief for his fifth claim.

## IV. ORDERS

For the reasons discussed above, it is

ORDERED that Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 1), filed *pro se* by Migel C. Wise is DENIED and this action is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that no certificate of appealability shall issue because Mr. Wise has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* is denied for the purpose of appeal. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Mr. Wise files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED March 31, 2020.

BY THE COURT:

_____

R. BROOKE JACKSON
United States District Judge